IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ERICA S. LENENTINE, | CIV. NO. 23-00011 JAO-RT |
| Plaintiff, | |
| vs. | **ORDER AFFIRMING THE DECISION OF COMMISSIONER OF SOCIAL SECURITY** |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**ORDER AFFIRMING THE DECISION OF COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Erica S. Lenentine ("Plaintiff") appeals Defendant Commissioner of Social Security Kilolo Kijakazi's (the "Commissioner") denial of her application for social security disability benefits.  She asks the Court to reverse the Commissioner's finding that she is not disabled and remand the matter for a new administrative hearing.  Specifically, Plaintiff asserts that the Administrative Law Judge ("ALJ") improperly rejected her testimony, Dr. Hyun Dong Hahn's "Mental Impairment Medical Source Statement" ("medical source statement"), and Drs.

David Lam and Benjamin Young's Prior Administrative Medical Findings ("PAMF") without legally sufficient reasons.

For the following reasons, the Court AFFIRMS the Commissioner's decision denying Plaintiff's application for social security disability benefits.

## I.   LEGAL STANDARDS

### A.   Standard of Review

The decision of the Commissioner must be affirmed "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citation omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  To determine whether there is substantial evidence to support the ALJ's decision, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted).  If the record, considered as a whole, can reasonably support either affirming or reversing the ALJ's decision, the decision must be

2

affirmed. *See Hiler v. Astrue*, 687 F.3d 1209, 1211 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." (citation omitted)); *Burch*, 400 F.3d at 679.  The ALJ, as the finder of fact, is responsible for weighing the evidence, resolving conflicts and ambiguities, and determining credibility.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Even where legal error occurs, the decision must be upheld "where that error is harmless, meaning that it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citation omitted).

## B.    Eligibility for Disability Benefits

To be eligible for disability insurance benefits, the plaintiff must demonstrate that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  In addition, it may only be determined that a plaintiff is under a disability "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Only disabilities existing before the date last insured establish entitlement to disability insurance benefits.  *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam)).

A five-step analysis is employed in evaluating disability claims:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch*, 400 F.3d at 679; 20 C.F.R. § 404.1520.  It is the plaintiff's burden to prove a disability in steps one through four of the analysis.  *See Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

"However, if a claimant establishes an inability to continue her past work, the

burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citation omitted).

## II.   ADMINISTRATIVE PROCEEDINGS

On March 25, 2020, Plaintiff applied for disability insurance benefits, alleging disability beginning January 1, 2020. *See* ECF No. 8-3 at 15.[1] The Social Security Administration denied her claim on November 29, 2021, and her request for reconsideration on December 22, 2021. ECF No. 8-3 at 15.

Due to COVID-19, a telephonic hearing was held before the ALJ on July 21, 2022. ECF No. 8-3 at 15. All participants attended the hearing by telephone, including Plaintiff who agreed to appear by telephone and confirmed such agreement at the start of the hearing. ECF No. 8-3 at 15. On August 5, 2022, the ALJ issued his Decision, and concluded that Plaintiff had not been under a disability under the Social Security Act ("SSA") from January 1, 2020, through the date of the Decision. ECF No. 8-3 at 28.

---

[1] The Commissioner is encouraged to streamline the page numbers when filing the administrative record to avoid further confusion and save the Court from expending time to decipher each party's pincite. For example, at ECF No. 9-3 at 37, there are three different page numbers cited for the same page: the top center of the page states that it is page "38 of 327," while the top right corner of the page indicates it is page "37 of 479," and the bottom right states that it is page "36 of 324." Because of this confusion, all page numbers in this Order will refer to the electronic CM/ECF pagination.

Progressing through the five-step sequential evaluation, the ALJ determined at step one that Plaintiff meets the insured status requirements of SSA through December 31, 2024, and that Plaintiff had not engaged in substantial gainful employment since January 1, 2020.  ECF No. 8-3 at 17.  At step two, the ALJ listed the following severe impairments that significantly limit Plaintiff's ability to perform basic work activities:  "degenerative changes of the cervical spine, degenerative changes of the lumbar spine, migraine headaches, post-traumatic stress disorder (PTSD), major depressive disorder, cluster B personality disorder, and anxiety disorder."  ECF No. 8-3 at 17.

As to Plaintiff's mental impairments, the ALJ concluded that Plaintiff did not satisfy "paragraph B."[2]  ECF No. 8-3 at 18.  In particular, the ALJ concluded that based on the mental status examinations ("MSE"), Plaintiff had no more than mild limitations as to issues with memory or applying information.  ECF No. 8-3 at 18.  As to interacting with others, concentration, persisting or maintaining pace,

_____

[2]  Paragraph B "provides the functional criteria we assess, in conjunction with a rating scale, to evaluate how your mental disorder limits your functioning.  These criteria represent the areas of mental functioning a person uses in a work setting.  They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  We will determine the degree to which your medically determinable mental impairment affects the four areas of mental functioning and your ability to function independently, appropriately, effectively, and on a sustained basis.  To satisfy the paragraph B criteria, your mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."  20 C.F.R. Part 404, Subpart P, Appendix 1 (12.00(A)(2)(b)) (citations omitted).

and adapting or managing oneself, the ALJ determined that Plaintiff's limitation was only moderate.  ECF No. 8-3 at 18–19.  And because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ concluded that "paragraph B" was not satisfied.

The ALJ also determined that "paragraph C"[3] was not met because the record did not show any "serious or persistent" psychological impairment or medical reports equivalent to the severity found in the "paragraph C" criteria.  ECF No. 8-3 at 19.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  ECF No. 8-3 at 18.  And before considering step four, the ALJ determined that Plaintiff had the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except with the following additional limitations: occasional ramps and stairs; occasional stoop, crouch, kneel, and crawl; no ropes, ladders, or scaffolds; no concentrated exposure to extreme cold or vibration; no high exposed places or moving mechanical parts; can tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks, significant independent judgment, a production rate pace, teamwork in completing job tasks, or contact with the public; can tolerate a moderate noise intensity level as defined in the *Dictionary of*

---

[3] "To satisfy paragraph C criteria, your mental disorder must be 'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2 (see 12.00G)."  20 C.F.R. Part 404, Subpart P, Appendix 1 (12.00(A)(2)(b)).

> *Occupational Titles* (DOT) and its companion, the *Selected*
> *Characteristics of Occupations*; has no limitation to light that
> would be typically found in an indoor work environment, such
> as an office or retail store, but can tolerate only occasional
> exposure to light that is brighter than that; no more than
> occasional exposure to atmospheric conditions.

ECF No. 8-3 at 19.

At step four, the ALJ concluded and the vocational expert ("VE")
confirmed, that Plaintiff's RFC precludes her from performing past work as a
teacher and an aviation structural mechanic.  ECF No. 8-3 at 27.  At step five,
however, the ALJ accepted the VE's testimony that based on Plaintiff's age,
education, work experience, and RFC, Plaintiff would be able to perform the
requirements of other occupations such as "maker" and "router", which "exist in
significant numbers in the national economy."  ECF No. 8-3 at 27–28.  Based on
that conclusion, the ALJ found Plaintiff not disabled.  ECF No. 8-3 at 28.

### III.   DISCUSSION

Plaintiff argues that the ALJ improperly rejected her testimony, Dr. Hahn's
medical source statement, and the PAMFs of Drs. Lam and Young without legally
sufficient reasons.  ECF No. 14 at 6.  And while Plaintiff supported her disability
insurance application by referencing both her physical and mental impairments,
she only challenges the ALJ's treatment of her mental impairments on appeal.  The
Court will therefore only address Plaintiff's mental impairments.

### A.    Plaintiff's Testimony

8

Plaintiff asserts that the ALJ improperly discredited her testimony without offering clear, convincing, and specific reasons, and instead "mischaracterize[ed] evidence and cherry-pick[ed] parts of the record [to] support his conclusion, while ignoring parts that did not."  ECF No. 14 at 15–16 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).  Plaintiff offers five reasons as to why the ALJ erred:  First, the ALJ misstated Plaintiff's testimony that "she rarely left her home" and then found that inconsistent with progress notes by an occupational therapist.  *Id*. at 16.  Second, the ALJ rejected Plaintiff's testimony regarding her mental explosions and rage, including the conflict she has with others, and instead found that Plaintiff "can calm herself down."  *Id*. at 17–18.  Third, contrary to the ALJ's conclusions, medication did not sufficiently reduce Plaintiff's symptoms. *Id*. at 18.  Fourth, even if Plaintiff's symptoms improved, it was the result of her avoiding stressors and not working, which is not a valid reason to reject her testimony.  *Id*. at 19.  And finally, the ALJ's selective use of the MSE findings to reject Plaintiff's testimony, without considering the entire record or the nature of her condition, was improper.  *Id*. at 20.  But as explained below, the ALJ provided clear, convincing, and specific reasons for rejecting her testimony and the Court therefore will not disturb the ALJ's Decision as to Plaintiff's credibility.

"Credibility determinations are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citation omitted); s*ee Greger v. Barnhart*, 464

F.3d 968, 972 (9th Cir. 2006) ("[Q]uestions of credibility and resolutions of

conflicts in the testimony are functions solely of the Secretary." (internal quotation

marks and citation omitted)); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

When the ALJ makes specific findings justifying a decision to disbelieve a

plaintiff's testimony, and those findings are supported by substantial evidence in

the record, it is not the Court's role to second-guess the ALJ's decision.  *See Fair*,

885 F.2d at 604.

 The Ninth Circuit has established a two-part analysis for determining the

extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented
> objective medical evidence of an underlying impairment which
> could reasonably be expected to produce the pain or other
> symptoms alleged.  In this analysis, the claimant is not required
> to show that her impairment could reasonably be expected to
> cause the severity of the symptom she has alleged; she need only
> show that it could reasonably have caused some degree of the
> symptom.   Nor must a claimant produce objective medical
> evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is
> no evidence of malingering, the ALJ can reject the claimant's
> testimony about the severity of her symptoms only by offering
> specific, clear and convincing reasons for doing so. This is not
> an easy requirement to meet: The clear and convincing standard
> is the most demanding required in Social Security cases.

*Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15) (footnote

omitted).

10

Here, the ALJ engaged in this two-part analysis.  He acknowledged that there were both positive and negative MSEs and that when taken together it showed "some RFC psychological limitations were warranted."  ECF No. 8-3 at 23.  The Decision also did not mention or otherwise find evidence of malingering.  *See id.*  This satisfies part one.  At part two, the ALJ then determined that "those same MSEs did not comport with the level of severity claimant has suggested are her symptoms."  *Id.*  The Court concludes the ALJ's determination at part two was supported by specific, clear, and convincing reasons, and addresses Plaintiff's arguments to the contrary in turn.

### 1.    "She rarely left her home."

The ALJ found Plaintiff's testimony regarding how often she left home to be inconsistent with the record.  *See* ECF No. 8-3 at 23.  But according to Plaintiff, the ALJ mischaracterized her testimony.  Specifically, she objects that she "did not say she 'rarely' left [home]," but rather stated "that she does not like to go out, only goes out with her husband, and has had outbursts with others out of her home."  ECF No. 14 at 16.  But based on Plaintiff's own testimony that she never went to the grocery store without her husband, never went out with friends, and never went out with anyone who is not her husband, *see* ECF NO. 8-3 at 52, 54, the ALJ reasonably interpreted her testimony as inconsistent with a treatment note that indicated she "leaves home at least several times a week despite social

anxiety." *Id.* at 24.  While this interpretation may not be the *only* reasonable one, it is not the Court's duty to reweigh the evidence or substitute its judgement for the ALJ's.  *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Since the Court concludes the ALJ's interpretation of Plaintiff's testimony was reasonable, it will not second-guess it.  *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Norris v. Colvin*, 160 F. Supp. 3d 1251, 1274 (E.D. Wash. Feb. 2, 2016) ("[T]he ALJ's interpretation of [a claimant's] testimony may not be the only reasonable one . . . [b]ut [if] it is a reasonable interpretation and . . . supported by substantial evidence . . . it is not our role to second-guess it." (quoting *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)).

   **2.     "Can calm herself down."**

   The ALJ concluded that Plaintiff's testimony that she experiences mental explosions and road rage "[was] not borne in the record" and that she "can calm herself down" if she gets upset while driving.  ECF No. 8-3 at 24.  Plaintiff argues the ALJ erred because he only noted Dr. Hahn's treatment note from March 2021 where Plaintiff described someone being threatening to her following a misunderstanding at a McDonald's parking lot.  *Id*. at 25.  Instead, according to Plaintiff, the ALJ should have taken note of Dr. Hahn's May 2022 treatment note that stated Plaintiff "has been trying to get out more but has had incidents with a couple of her neighbors involving walking her dog.  One incident led to police

involvement.  She now is reluctant to walk through her neighborhood."  ECF No. 9-7 at 106.

It is unclear to the Court, however, how Dr. Hahn's May 2022 treatment note demonstrates that Plaintiff suffers from mental explosions or road rage.  There is not enough information or context about these incidents, even the incident that involved the police, for the Court to reach the conclusion that they were the result of her explosions or rage.  So even if the ALJ had considered the May 2022 treatment note, it would not have contradicted the ALJ's reliance on the March 2021 treatment note where Plaintiff admitted that the McDonald's parking lot incident "was not a result of her getting aggressive with someone but rather through a misunderstanding and the other side escalating and physically threatening her."  ECF No. 9-3 at 148.  And in fact, at the end of Dr. Hahn's May 2022 treatment note, he indicated that Plaintiff "denies any acute [mental health] concerns at this time."  ECF No. 9-7 at 106.

Plaintiff also claims that the ALJ failed to consider an assessment by Dr. Hahn in which he concluded:

> [Plaintiff] has an acute sense of justice and has difficulty accepting that there are people in this world that do not think of others and will likely never change how they are.  Ultimately this creates conflict between her and others as well as internally with herself as she also views this as ego-dystonic.

13

ECF No. 9-3 at 150.  But like Dr. Hahn's May 2021 treatment note, there is nothing in that assessment to indicate that her "acute sense of justice" results in mental explosions and rage.  Indeed, at the end of Dr. Hahn's assessment, he noted that "[Plaintiff is] not considered to be an imminent danger to herself or anyone else at this time."  *Id*.

Overall here, the ALJ offered three specific reasons to discredit Plaintiff's testimony: the McDonald's parking lot incident where *someone else* was aggressive, Dr. Hahn's report that Plaintiff admitted that she can calm herself down when she gets upset driving, and her report to Dr. Hahn that she was doing "surprisingly well mood wise."  ECF No. 8-3 at 25.  In doing so, the ALJ properly relied on medical evidence to discredit Plaintiff's testimony as to her claimed symptoms.  *See Lingenfelter*, 504 F.3d at 1040 (noting that, when making a credibility determination, the ALJ can consider, among other factors, "whether the claimant engages in daily activities inconsistent with the alleged symptoms" and "whether the alleged symptoms are consistent with the medical evidence").  Additionally, the ALJ properly found that "unlike her discussions with providers about anxiety and some depression, she did not seem to mention explosions and rage as debilitating concerns."  ECF No. 8-3 at 25; *see also Lingenfelter*, 504 F.3d at 1040 (noting ALJ may also consider whether the claimant undergoes treatment for the symptoms in assessing credibility).  Indeed, Plaintiff has not pointed to any

14

instances in the medical record, and the Court can find none, in which Plaintiff raised explosions and rage as an issue.

The Court therefore concludes that the ALJ offered specific, clear and convincing reasons to reject her testimony regarding explosions and rage.  And despite Plaintiff's contention, the Court will not endeavor to reweigh the evidence or substitute its judgment for that of the ALJ's.  *See Barnhart*, 278 F.3d at 954.

### 3.    Medications

In addition to the above reasons, the ALJ also discredited Plaintiff's testimony regarding her mental impairments because "[m]edications helped reduce, even if not eliminate psychiatric symptoms."  ECF No. 8-3 at 25.  But despite citing to treatment notes from June 2021 and November 2021 that showed improvements because of the medication, Plaintiff argues that the ALJ erred when he did not take into consideration three other treatment notes by Dr. Hahn.  In those notes, Dr. Hahn stated:

- "[Plaintiff] reports some benefit from the increase in Citalopram. [Plaintiff] does not necessarily feel any improvement in her anxiety." ECF No. 9-3 at 121.

- "[Plaintiff's] [o]nly concern at this time is disturbing dreams/nightmares. She attributes this to the increase in Melatonin."  ECF No. 9-7 at 15.

- "She does report that the Diazepam does not work very fast."  *Id*. at 124.

Upon closer inspection, these three treatment notes *support* the ALJ's Decision.  Taking each in turn:

- Despite Plaintiff stating that she does not "feel any improvement in her anxiety," Dr. Hahn did note that "in some instances she is less avoidant." ECF No. 9-3 at 121.  Dr. Hahn also highlighted that "[Plaintiff] reports compliance [with her psychiatric medications] and *some benefit*." *Id.* (emphasis added).

- While Plaintiff complained of "disturbing dreams/nightmares," Dr. Hahn readjusted her dosage from 10 mg to 5 mg because "[Plaintiff] does not recall having this problem at lower dosing."  ECF No. 9-7 at 15.  And as was mentioned above, Dr. Hahn noted that "[Plaintiff] reports compliance and *benefit* from [mental health] meds."  *Id.* (emphasis added).

- Dr. Hahn's note that "Diazepam does not work very fast," does not mean that the medication is not working.  *Id.* at 124.  In fact, Dr. Hahn states that "[Plaintiff] reports compliance and *some benefit* from [Mental Health] meds."  *Id.* (emphasis added).

But even if there are doubts as to the interpretation of any of Dr. Hahn's treatment notes, if evidence exists to support more than one rational interpretation, the Court must defer to the ALJ's decision.  *See Saul*, 950 F.3d at 1154; *see*

16

*Batson*, 359 F.3d at 1193.  Yet even assuming those three treatment notes cut against the ALJ, the Court would still conclude the ALJ did not commit harmful error or act arbitrarily.  *See Barnhart*, 278 F.3d at 958 (concluding that credibility determinations must be made with sufficiently specific findings to allow "the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony").  That is because the ALJ is not required to list every possible treatment note that supports his finding.  *See Stewart v. Kijakazi*, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *findings and recommendations adopted*, 2023 WL 5109769 (E.D. Cal. Aug. 8, 2023) (The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.").

Here, the ALJ properly offered two specific examples, treatment notes from June 2021 and November 2021, to demonstrate that medication was working.  And effective treatment with medication is a clear and convincing reason to discredit symptom allegations.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

Therefore, the ALJ's reliance on the medical evidence, specifically the treatment through medication, constitutes a clear, convincing, and specific reason to discount Plaintiff's testimony.

### 4.    "Improvement is not an inevitable reason."

Plaintiff then argues that the ALJ erred by not acknowledging that her symptoms were reduced when she did not work and avoided stressors.  She relies on *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014) for the proposition that mental health improvement "is not an inevitable reason to reject testimony, but must be taken in context of treatment and limiting stressors."  ECF No. 14 at 19.

*Garrison*, however, is inapplicable to this case.  There, the Ninth Circuit concluded that the ALJ erred because he discredited plaintiff's testimony "mainly on the ground that the record showed [plaintiff's] condition had improved due to medication at a few points between April 2007 and June 2009."  *Garrison*, 759 F.3d at 1016–17.  In other words, "[r]ather than describe Garrison's symptoms, course of treatment, and bouts of remission, and thereby chart a course of improvement, the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit [plaintiff]."  *Id*. at 1018.

That is not the case here.  While "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment," *id*. at 1017, there is no record of Plaintiff's symptoms fluctuating.  Indeed, as mentioned above, even the three treatment notes that Plaintiff argues the ALJ failed to reference do not actually demonstrate that symptoms worsened during treatment.  And more significantly, the ALJ in *Garrison* erred because he *only* relied on fluctuating

symptoms to discredit plaintiff's testimony. Here, the ALJ offered *multiple* specific examples to discredit Plaintiff, including noting the improvement due to medication, the inconsistencies in Plaintiff's testimony, and that the alleged symptoms did not match the medical record.

### 5.      Cherry-picking

Lastly, Plaintiff avers that the ALJ erred when he cherry-picked portions of the MSE findings to reject Plaintiff's testimony instead of considering the record as a whole or the nature of her condition. ECF No. 14 at 19. The Court, however, concludes that the ALJ's actions did not amount to cherry-picking.

The Ninth Circuit has cautioned that ALJs "may not cherry-pick from mixed results to support a denial of benefits, especially in the context of mental illnesses which may exhibit fluctuations in symptoms such that any single notation that a patient is feeling better or has had a good day does not imply that the condition has been treated." *Leah v. Comm'r of Soc. Sec.*, 616 F. Supp. 3d 1099, 1107 (D. Or. July 21, 2022) (internal quotation marks and citation omitted). In other words, an ALJ cherry-picks if he or she takes some characterizations without considering the full context of the medical record. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998).

But as explained above, this is not a case of fluctuating symptoms. Nor is this a case of selective citation or mischaracterizing the evidence. The ALJ did not

rely on a single passage from the MSE or one particular treatment note to then represent the entirety of the medical record.  In addition to the reasons outlined above, the ALJ offered multiple other specific reasons to discount Plaintiff's symptom testimony, including pointing to medical evidence that contradicted her pain allegation.  For example, despite Plaintiff's complaint about her mood, the ALJ cited to medical records showing Plaintiff's mood was "better," and that she "denies any acute [mental health] concerns at the time."  ECF No. 9-3 at 97; *see id.* at 122, 130 (mood reported to be "okay"); *id*. at 191 ("[Plaintiff] maintaining with no acute [mental health] concern at this time.").

The ALJ also relied on several reports to show that Plaintiff did not suffer from concentration problems, contrary to Plaintiff's testimony.  *Compare* ECF No. 8-3 at 52 (When asked in the hearing how often brain fog was an issue, Plaintiff testified, "Oh, it's constant"), *with* ECF No. 9-2 at 70 (Dr. Gina Wilson's report in 2021 that Plaintiff had "normal affect, normal insight, normal concentration"); *id*. at 96 (Advanced Practice Registered Nurse ("APRN") Rozlynn Dela Pina documented in 2021 that Plaintiff's attention and concentration was "good"); ECF No. 9-3 at 97, 122, 130, 139, 150; ECF No. 9-7 at 16, 108, 125 (Dr. Hahn noted on six different occasions in 2021 and twice in 2022 that Plaintiff's attention and concentration was sustained and within normal limits).

Similarly, the ALJ also cited to those very medical records to contradict Plaintiff's testimony that she suffers from memory issues.  *Compare* ECF No. 8-3 at 55 (Plaintiff testified that her memory is so inconsistent that she requires a lot of reminders, including reminders from her husband ), *with* ECF No. 9-2 at 96 (APRN Pina documented that Plaintiff has "[n]o issues identified with short or long term memory"); ECF No. 9-3 at 97, 122, 130, 139, 150; ECF No. 9-7 at 16, 108, 125 (Dr. Hahn noted in 2021 and 2022 that Plaintiff's short term memory and long term memory were intact).

This is not a case of cherry-picking.  Ultimately, what the "clear and convincing" standard requires is that an ALJ show his or her work.  *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).  The ALJ did just that.  "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince." *Id*. at 494.  The Court thus concludes that the ALJ's rationale "has the power to convince," and is supported by substantial evidence.

As to Plaintiff's testimony, the ALJ did not commit harmful error and the Court will not disturb the ALJ's credibility finding.

## B.    Medical Opinions

Plaintiff then argues that the ALJ improperly rejected the medical opinion of Dr. Hahn and the PAMFs of Drs. Lam and Young without legally sufficient reasons.  For reasons set forth below, the Court disagrees.

In *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), the Ninth Circuit explained how recent regulatory changes affect the evaluation of medical opinions:

> As a threshold matter, we must decide whether recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion.  We conclude that they do.  For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.  *Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.*

*Id*. at 787 (emphasis added); *see also* 20 C.F.R. §§ 404.1520c, 416.920c (2017). This new regulation utilizes several factors to evaluate the persuasiveness of a medical opinion: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (internal quotation marks omitted) (quoting 20 C.F.R. §§ 404.1520c, 416.920c(a), (c)(1)–(5), 416.920c(a), (c)(1)–(5)).  Of these, supportability and consistency are the most important considerations.  *See Woods*, 32 F.4th at 791.

"Supportability" is defined as the "extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Id*. at 791–92 (internal quotation marks and citation omitted). "Consistency" is whether "the medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at 792 (internal quotation marks and citation omitted). When analyzing these factors, the ALJ must consider supportability and consistency, but may "explain how he considered factors three, four, and five." *Paul H. v. Kijakazi*, 2023 WL 5420232, at *4 (N.D. Cal. Aug. 22, 2023) (citing *Wood*s, 32 F.4th at 792). The ALJ cannot reject a "doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. (internal quotation marks omitted) (citing *Woods*, 32 F.4th at 792).

### 1.    Dr. Hahn

The ALJ took issue with Dr. Hahn's medical source statement, which was presented as a "check-box" style opinion. *See* ECF No. 9-7 at 83–88. Dr. Hahn checked "marked" and/or "extreme" limitation in every functional category. These categories included: "MENTAL ABILITIES AND APTITUDES NEEDED TO DO UNSKILLED WORK," "MENTAL ABILITIES AND APTITUDES

NEEDED TO DO SEMISKILLED AND SKILLED WORK," "MENTAL

ABILITIES AND APTITUDES NEEDED TO DO CERTAIN TYPES OF JOBS,"

and "FUNCTIONAL LIMITATION." *Id.* The ALJ found Dr. Hahn's opinion was

neither well supported nor consistent with the overall record, and therefore

unpersuasive. ECF No. 8-3 at 27.

Plaintiff argues that rejection of medical authority based solely on the form

used, i.e., a "check-box" style opinion, is improper. The Court agrees. The Ninth

Circuit is clear that "there is no authority that a check-the-box form is any less

reliable than any other type of form; indeed, agency physicians routinely use these

types of forms to assess the intensity, persistence, or limiting effects of

impairments." *Trevizo*, 871 F.3d at 677 n.4. However, the *Trevizo* Court did

clarify that an ALJ *may* reject a doctor's opinion so long as he or she provides

"specific and legitimate reasons for doing so." *Id.* (citation omitted).

Here, the ALJ did not hang his hat solely on the form of the medical source

statement, i.e., a "check-box" style opinion, but properly analyzed the

supportability and consistency factors in determining its persuasiveness. The ALJ

outlined the following:

> For instance, [Dr. Hahn's] marked and extreme limitations in
> areas like sustaining concentration and memory were
> incongruent with MSEs showing "normal" or "good"
> concentration (5F/15, 41; 6F/96, 121, 129, 138, 149; 7F/11;
> 15F/21, 38) along with "no issues identified with short- or long-
> term memory" (5F/41), "grossly intact recent and remote

24

memory (6F, 96, 121, 129, 138, 149; 7F/11; 15F/21, 38).  And there were other inconsistencies between the marked and extreme limitations and evidence including, but not limited to, evidence showing no in-patient psychiatric care, little evidence of "a lot" of panic attacks, and claimant's ability to homeschool with some help.

ECF No. 8-3 at 27.

Plaintiff seems to argue that the above analysis only supports the consistency factor and not the supportability factor.  *See* ECF No. 8-3 at 27 (the following statement preceded the above analysis: "Moreover, [Dr. Hahn's] opinion was not consistent with evidence to the contrary").  And therefore, according to Plaintiff, "[r]emand for proper consideration of supportability is necessary."  ECF No. 14 at 28.  But the Court does not need to read the Decision so narrowly.  *See Record v. Kijakazi*, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (quoting *Wilson v. Berryhill*, 757 F. App'x 595, 597 (9th Cir. 2019)).  For example, in combination with this discussion, the ALJ noted that even "[t]hough Dr. Hahn was [Plaintiff's] psychiatrist, his extreme limitations were not well supported" because he "[g]enerally . . . just made brief general statements that claimant had various difficulties," i.e., there was a noticeable lack of explanation despite his familiarity with Plaintiff.  ECF No. 8-3 at 27.  In sum, the ALJ articulated specific reasons in

support of both the supportability and consistency factors and the Court therefore concludes that the ALJ's reasoning is supported by substantial evidence.

### 2.     Drs. Lam and Young

The ALJ found Dr. Lam's PAMF "mostly, but not entirely persuasive," and that Dr. Young's PAMF was "generally consistent."  ECF No. 8-3 at 27. "However, to the extent that Dr. Lam provided more precisely defined functional limitations, the [ALJ] relied on that PAMF more than Dr. Young's in assessing the RFC."  ECF No. 8-3 at 27.

Plaintiff appears to argue that the ALJ erred when he adopted the doctors' narratives but ignored those same doctors' findings of the severity of Plaintiff's symptoms.  Specifically, both doctors marked "moderately limited" as to Plaintiff's ability to perform activities within a schedule, be punctual, and complete a normal workday and workweek without interruptions from psychologically based symptoms.  ECF No. 17 at 13 (citing ECF No. 8-4 at 10, 22).  And as to Plaintiff's social interaction limitation, Dr. Young rated Plaintiff's ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes as "moderately limited."  *Id.* (citing ECF No. 8-4 at 23).  By ignoring those "moderately limited" findings, according to Plaintiff, the ALJ "chang[ed] the meaning of the doctors' narratives to fit the ALJ's RFC finding."  *Id.* at 12.

The Court finds no error in the ALJ's analysis of Drs. Lam and Young's PAMFs.  As to Dr. Lam's PAMF, the ALJ determined it was "mostly, but not entirely persuasive."  ECF No. 8-3 at 27.  He reasoned that Dr. Lam's opinion was supported by medical evidence that showed Plaintiff could "still homeschool her son, drive, shop, and use a computer," which was based on his qualifications as a "mental health specialist . . . experienced in disability programs."  *Id*.  The ALJ, however, offered several citations to the record to explain that Dr. Lam's PAMF "was mostly consistent with the record showing that claimant's mental health conditions improved with treatment."  *Id*.  As a result, the ALJ did not find persuasive Dr. Lam's finding that Plaintiff has a limitation to perform detailed tasks.  *Id*.  Similarly, the ALJ determined Dr. Young's PAMF to be supported by the record, citing to findings by Dr. Hahn, and stating that it was "generally consistent showing that claimant can sustain each of these areas [namely, concentration and persistence; social interactions, and adaptations], making this PAMF persuasive."  *Id*.

But to the extent that Plaintiff argues that an ALJ must adopt the findings of a PAMF in its entirety if he or she believes the PAMF to be "generally persuasive," that argument is unavailing.  An ALJ can find a PAMF generally or somewhat persuasive but with exceptions—so long as it is supported by substantial evidence.  *See Wolfe v. Comm'r of Soc. Sec. Admin.*, 2023 WL 3317076, at *10 (D.

Ariz. May 9, 2023) ("In making these persuasiveness findings, the Court finds that the ALJ meaningfully considered the evidence that [the doctor] relied on to support his PAMF and the evidence that was relevant to the factor of consistency between [the doctor's] PAMF and the rest of Plaintiff's medical record.  The ALJ's ultimate conclusion—finding [the doctor's] PAMFs to be generally persuasive, *except* for his marked concentration limitation finding—was therefore supported by substantial evidence and was not in err." (emphasis in original)).  Here, for both PAMFs, the ALJ cited to several parts of the record already discussed at length earlier in the Decision to support his supportability and consistency analysis.  *See id.* at *8 ("The ALJ did not err merely because he failed to repeat his findings with respect to [the doctor's] examination in the PAMF analysis.").

As to Plaintiff's argument that the ALJ erred in how he used the PAMFs in crafting the RFC, "there is no requirement that an RFC completely mirror a medical opinion."  *Sandoval v. Comm'r Soc. Sec.*, 2022 WL 3229829, at *4 (E.D. Cal. Aug. 10, 2022) (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.") (citation omitted))).  So despite Plaintiff's characterization, the ALJ did not "ignor[e] the doctors' findings as to the severity of Erica'[s] symptoms."  ECF No. 17 at 13.  As explained above, the ALJ carefully considered the persuasiveness of both PAMFs, by analyzing their supportability

and consistency, and the Court finds that a reasonable person examining the evidence could reach the same conclusions.  The fact that the PAMFs or the medical record could be read differently does not change the Court's analysis.  *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." (citation omitted)).

The Court therefore concludes that the ALJ's persuasiveness determinations of both PAMFs were supported by substantial evidence.

### IV.       CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's Decision.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, September 25, 2023.



Jill A. Otake
United States District Judge

CIV. NO. 23-00011 JAO-RT; *Lenentine v. Kijakazi*; Order Affirming the Decision of Commissioner of Social Security